```
                IN THE UNITED STATES BANKRUPTCY COURT

                FOR THE SOUTHERN DISTRICT OF TEXAS

                         HOUSTON DIVISION

                                  )
IN RE                             )
                                  )
GLENN and TINA TIREY,             )  CASE NO. 05-80068-H3-13
                                  )
       Debtors                    )
                                  )
```

MEMORANDUM OPINION

The court heard "Debtors [sic] Claim Objection/Motion to Determine Value and Interest Rate on Secured Claim" (Docket No. 11) filed by Glenn and Tina Tirey ("Debtors"), CIT Group/Sales Financing, Inc's ("CIT") Objection, Amended Objection, and Supplemental Objection To Debtors' Proposed Plan of Reorganization (Docket Nos. 10, 32 and 33) and the Joint Motion to Consolidate Hearings and Accept Agreed Set of Facts (Docket No. 50) filed by Debtors and CIT.  After review of the file, pleadings, stipulation, evidence and argument of counsel, the court grants the Joint Motion, overrules CIT's Objection to Confirmation, sustains in part Debtors' Objection to CIT's claim and values the collateral at $45,000 with interest at the rate of nine percent (9%) for purposes of determining the secured amount of CIT's claim.  The remainder of CIT's claim is unsecured.  The

following are the Findings of Fact and Conclusions of Law of the court.  A separate conforming Judgment will be entered simultaneously with this Memorandum Opinion.  To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such.  To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

Debtors filed a voluntary Chapter 13 petition on January 3, 2005.  Docket No. 1, Agreed Set of Facts No. 10.  CIT is the holder of a secured claim against the Debtor pursuant to a Deed of Trust and Assignment of Rent and Financing Statement for a 5.2 acre parcel of real property located at 201 Hickory Court, Cleveland, Texas and a 1999 Cornerstone CS1806 manufactured home, Serial Number SHAL06177A, ("Collateral").  Exhibit No. 1.  CIT filed a Proof of Claim in the amount of $102,848.66.  In Debtors' proposed Chapter 13 plan, the collateral is valued at $44,500 and Debtors propose to pay 7.25% interest on the claim.  Docket No. 6.

The Debtors and CIT filed a Joint Motion to Consolidate Hearings and Accept Agreed Set of Facts (Docket No. 50) requesting that the court combine the hearings on the Objection to Claim with the Objection to Confirmation and accept the agreed

stipulations of fact.  The court finds that the Objection to Claim and Objection to Confirmation involve common factual and legal issues.  It promotes judicial efficiency to resolve these matters together and the court will consider them simultaneously.  The proposed agreed stipulations of fact contained in Docket No. 50 are adopted by the court.

CIT contends that Debtors cannot modify its rights pursuant to 11 U.S.C. § 1322(b)(2) which prohibits the modification of a claim secured by "real property that is the debtor's principal residence."  As such, CIT believes that Debtors, in their plan, are required to provide for the full amount of their claim, $102,848.66.  Debtors request that the court find that the anti-modification prohibition does not apply to CIT's claim.  Generally, unless the exception established by 11 U.S.C. § 1322(b)(2) applies, a claim is secured only by the value of the property to which the lien is attached pursuant to 11 U.S.C. § 506.  Section 506 allows a debtor to bifurcate the claim into secured and unsecured portions.  In the event that the court finds that section 1322(b)(2) is not applicable, the

parties stipulated that the secured value of CIT's collateral, the real property and the manufactured home, is $45,000.  Agreed Set of Facts, No. 14.

On May 7, 1999, Debtors purchased the real property and manufactured home at the same time and CIT financed the transaction.  Agreed Set of Facts, No. 1, 2 and 4.  Several documents in connection with the transaction were executed by Debtors, who have owned the collateral since its purchase. Debtors occupy the manufactured home as their principal residence.  Agreed Set of Facts, No. 3, 6, 7, and 11.

On July 2, 1999, the Texas Department of Housing and Community Affairs issued a "Texas Original Certificate of Ownership - Manufactured Home Document of Title" ("Certificate of Title") for the manufactured home.  RGS Sales, Inc. is listed as the seller and CIT is listed as having a mortgage lien against the manufactured home.  Since the purchase of the collateral by Debtor, CIT has been the owner and holder of the mortgage debt and lien relating to the real property and the manufactured home. Agreed Set of Facts, No. 5, 8, and 9.

Section 506(a) establishes the extent to which a claim is a "secured claim" for bankruptcy purposes.  A claim is secured

4

Case 05-80068   Document 57   Filed in TXSB on 03/31/06   Page 5 of 17

only by the value of the property to which the lien is attached. An allowed claim can be bifurcated under section 506(a), leaving a creditor with a secured claim to the extent of the value of the collateral and an unsecured claim as to the deficiency. A Chapter 13 debtor's ability to bifurcate a claim is limited by section 1322(b)(2) of the Bankruptcy Code.

Section 1322(b)(2) prohibits a chapter 13 debtor from modifying the rights of secured creditors whose claims are secured only by a security interest in real property that is the debtor's principal residence. *See Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). To determine whether Debtors may modify the rights of CIT, the court must examine whether this exception applies. The legislative history of this section indicates that this exception was intended to protect lenders involved in home mortgage financing, by precluding chapter 13 debtors from modifying the terms of a home mortgage instrument. Modification is allowed except on claims wholly secured by real estate mortgages. *See* S. Rep. No. 989, 95th Cong., 2d Sess. 141 (1979). This exemption is narrowly worded and it is restricted to situations when the claim is secured "only" by a "security interest" in "real property" that

5

is the debtor's "principal residence."  *In re Blevins*, 152 B. R. 130 (Bankr. N.D. Tex. 1992).

Thus, the issue presented for consideration is whether the manufactured home in the instant case is deemed real property or personal property for the purpose of interpreting section 1322(b)(2).  The determination of whether this property is real or personal in nature is governed by the applicable state law. *See* 5 Collier on Bankruptcy ¶ 1322.06  (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2005);  *In the Matter of Robert L. Colver*, 13 B.R. 521 (Bankr. D. Nev. 1981). ; See 4 *Collier on Bankruptcy* ¶ 506.03[7].

At the time of purchase of the collateral, section 2.001 of the Texas Property Code, entitled "Manufactured Housing," listed under Chapter 2 "Nature of Property," provided that a manufactured home is personal property except where the home is permanently attached to the real property and the manufacturer's certificate of origin or the original document of title is surrendered for cancellation and a certificate of attachment is filed in the real property records of the county in

which the home is located.[1]  In that event, the manufactured home is characterized as real property.

CIT claims that section 2.001 of the Texas Property Code only applies in situations where a manufactured home and the land upon which it sits are not financed together.  It is not disputed that in the instant case both the real property and the manufactured home were financed together.  CIT claims that section 347.455(b)(2) of the Texas Finance Code[2] controls the nature of the characterization of the manufactured home.  This court disagrees.

---

[1] This statute was in effect on the date of purchase and execution of the documents which was when the rights of the parties were established. Subsequently, the statute was amended and on the date of filing bankruptcy it provided that a manufactured home is personal property and would only be considered real property if: the statement of ownership and location for the home issued under Section 1201.207, Occupations Code, reflects that the owner has elected to treat the home as real property; and a certified copy of the statement of ownership and location has been filed in the real property records in the county in which the home is located.  The court finds the statute as it existed at the time of purchase is applicable.  However, the court notes that under either provision the evidence does not establish that the provisions were satisfied such that the manufactured home in the instant case would be considered real property.

[2] The Finance Code was enacted by Acts 1997, 75th Leg., ch. 1008, § 1 and is a recodification of Vernon's Ann. Texas Civ. St. art. 5069-6A.01 et. seq.  There was no substantive change in the law.  *See* Section 43, Article III, Texas Constitution.  The legislative intent of Vernon's Ann. Texas Civ. St. art. 5069-6A.01 et. seq. was to make Texas law governing the financing of mobile homes more consistent with federal law and regulations, more responsive to the needs of the market, and to regulate credit transactions regarding mobile home sales.  *See* S.B. 979, Acts 1979, 66th Leg., p. 1576, Ch. 672, § 39.

7

Section 347.455 is part of the Finance Code that regulates interest, loans, and financed transactions. This section is under Subchapter J, "Rights and Duties of Creditor," which is part of Chapter 347, entitled "Manufactured Home Credit Transactions." The Bill Analysis by the Committee on Financial Institutions reflects that the purpose of changes to the predecessor of the Finance Code[3] was to eliminate conflicts between disclosures required by the federal law and Texas state law concerning interests rates or finance charges on several classifications of loans, insurance requirements and various disclosures associated with those loans, and penalties for violations. *See* S.B. 979, Acts 1979, 66th Leg., p. 1576, Ch. 672, § 39.

Section 347.455, "Real Property in Credit Transaction," allows parties to agree to include real property in the cash price of a manufactured home credit transaction if: 1) the real property does not exceed 200 acres; 2) the real property is purchased simultaneously or in conjunction with the purchase of the manufactured home; and 3) the creditor and consumer agree that the manufactured home is to be attached to

---

[3] Vernon's Ann. Texas Civ. St. art. 5069-6A.01 et. seq.

8

the real property within a reasonable time.  V.T.C.A. Finance Code § 347.455(a).  If the real property is included, the creditor may charge a fee ordinarily associated with a real property transaction and elect to treat the manufactured home as if it were residential real property for all purposes in connection with the credit transaction by conspicuously disclosing that election to the consumer.  V.T.C.A. Finance Code § 347.455(b).  If an election under subsection (b)(2) is made, the credit transaction is considered to be a residential real property loan for all purposes.

In Texas, manufactured homes are regulated by the Texas Manufactured Housing Standards Act ("MHSA").[4]  The Manufactured Housing Division of the Texas Department of Housing and Community Affairs governs the administration of the MHSA and is charged with enforcing its provisions.  The Department issues documents of title for manufactured homes which contain the dates of liens and names and addresses of lienholders.  It also governs the perfection of security interests in manufactured homes.  It also

---

[4] Effective June 1, 2003, Tex. Rev. Civ. Stat. Ann. art. 5221f, was repealed and recodified, with no substantive changes, as part of the Texas Occupations Code, Tex. Occ. Code Ann. §§ 1201.001 et. seq.

9

contemplates that a manufactured home may become permanently attached to real estate.

When a manufactured home is permanently affixed to the land and becomes stationary, it may become what is known as a fixture. A fixture is personal property so attached to the soil that it becomes part of the realty. The Texas Supreme Court set forth a three prong test for making the determination whether personal property becomes a fixture: mode and sufficiency of attachment; adaptation of the personalty to the use or purpose of the realty; and intent of the affixing party. *Logan v. Mullis*, 686 S.W.2d 6054 (Tex. 1985). However, the rules and regulations of the Manufactured Housing Division contain exact procedures for transforming a manufactured home from personalty to a fixture. When a manufactured home is permanently affixed to the real estate, the owner can obtain a certificate of attachment from the Division which requires the surrender of the original document of title and its cancellation by the Division. Title is cancelled after all liens have been released. The certificate is sent to the owner (or title company handling the closing)for recording in the deed records.

A lienholder must comply with the MHSA to perfect a lien against a manufactured home that is permanently affixed to real property. Unless the document of title is cancelled by the Department, filing the security interest in the appropriate real property records is not effective to perfect the security interest. *See W.H.V., Inc. v. Assocs. Hous. Fin.*, 43 S.W.3d 83 (Tex.App. --Dallas 2001, pet. Denied); *Giese v. NCNB Tex. Fourney Banking Ctr.*, 881 S.W.2d 776 (Tex. App. -Dallas 1994, no wri).

Courts are not at liberty to pick and choose among statutory enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed legislative intention to the contrary to regard each as effective. *Morton v. Mancari*, 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed. 2d 290 (1974); *Pittsburgh & Lake Erie R. Co. v. Railway Labor Executives' Assn.*, 491 U.S. 490, 109 S.Ct. 2584, 105 L.Ed. 415 (1989). When there are two acts upon the same subject, the rule is to give effect to both if possible. *United States v. Borden Co.*, 308 U.S. 188, 60 S. Ct. 182, 84 L. Ed. 181 (1939).

The term "manufactured home" in Prop. Code Ann. § 2.001 has the same meaning as in the MHSA. Section 2.001 of the Property Code relates to the nature or characterization of

11

manufactured homes as personalty or realty.  The MHSA regulates title documentation and lien perfection of manufactured homes, whether personalty or realty.  Certain procedures were designated for title documentation and lien perfection when a manufactured home becomes realty.  The Finance Code allows the parties to treat a credit transaction relating to a manufactured home and real property as a real property loan.  It does not abrogate the requirements of the MHSA nor does it modify or limit the character of a manufactured home as personalty or realty.  The court finds that there is no conflict among the statutes relating to manufactured housing.

Debtor, Glen Tiery, testified that the manufactured home was attached by anchors and strapped to the anchor by bolts.  It is sitting on blocks and has not been cemented onto the foundation.  The straps can be removed in about six hours without substantial damage to the land.  The front porch is not attached to the manufactured home.  The manufactured home is connected to electricity and the septic tank which is underneath the home is also electric.  There are shrubs and bushes planted around the manufactured home.  There is no other home structure on the property.

Tiery testified that he has never seen the Certificate of Ownership on the manufactured home.  Joint Exhibit No. 5.  He never surrendered the Certificate of Title to anyone nor did he file any documents in the real property records of San Jacinto County.  The Deed of Trust does contain the disclosure language that reflects CIT has elected to treat the manufactured home as if it were residential real estate for all purposes in connection with the loan transaction.  Joint Exhibit No. 1.

The Property Acquisition and Improvement Loan Agreement contains a provision that prior to making the final advance that Debtor would have to provide CIT, if required, all title and other documents necessary to reflect that the manufactured home has been made part of the real estate and is no longer a titled vehicle.  Joint Exhibit No. 9, page 5.  Additionally, Debtors executed a Limited Power of Attorney in favor of CIT which allowed CIT to execute, file and record appropriate state and/or federal documentation necessary to accomplish the registration, titling or documentation of the manufactured home, the perfection of any security interest under the Uniform Commercial Code or other applicable law, including any UCC-1 and/or fixture filing. Joint Exhibit No. 12.

These provisions in the loan documents reflect CIT contemplated having to comply with the Texas statutes governing manufactured housing and lien perfection (MHSA) and the requirements for the manufactured home to be considered real property (Section 2.001 of the Property Code). The court has been provided with no evidence to show that the manufactured home is considered to be real property under section 2.001 of the Texas Property Code nor that the provisions of the MHSA have been complied with such that the manufactured home is considered part of the real property.

The court finds that the manufactured home in the instant case is personal property. As such, CIT's security interest does not come within the exception of section 1322 of the Bankruptcy Code. The court will now address the valuation of CIT's claim under section 506 of the Bankruptcy Code. Section 506(a) provides that an allowed claim is a secured claim only to the extent "of the value of such creditor's interest in the estate's interest in property..." Thus, section 506(a) directs a determination of (i) the estate's interest in the collateral to be valued, and (ii) the creditor's interest in that interest.

The purpose of the valuation in this case is to determine how much the Debtors have to pay to CIT in order to confirm their plan in accordance with 11 U.S.C. § 1325(a)(5). The proposed disposition is the Debtors' continued retention and use of the home as part of their effort to fund the plan.  *See* 4 *Collier on Bankruptcy* ¶ 506.03[7] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2005); *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 962-63, 117 S.Ct. 1879, 1885, 138 L.Ed.2d 148, 158 (1997).

The court need not determine the value under section 506(a) as the parties stipulated that the combined fair market value of the land and manufactured home was $45,000 as of the date Debtors filed bankruptcy.  The contract rate of interest on Debtor's loan is 7.49%.  The court is concerned that CIT receive compensation in exchange for its loss of the present right to foreclose and liquidate its position.  The court notes that the Federal Funds Rate is the primary tool that the Federal Open Market Committee uses to influence interest rates and the

15

economy.  Changes in the Federal Funds rate have far-reaching effects by influencing the borrowing cost of banks in the overnight lending market, and subsequently the returns offered on bank deposit products such as certificates of deposit, savings accounts, and money market accounts.  Changes in the Federal Funds rate and the Discount Rate also dictate changes in the Wall Street Journal Prime Rate.[5]  The prime rate is the underlying index for most credit cards, home equity loans and lines of credit, auto loans, and personal loans.  The prime interest rate per the Wall Street Journal as of March 29, 2006 is 7.5%.  In order to compensate Creditor and in light of current market conditions, the court finds that 9% interest is reasonable.  *See Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004).

A  separate Judgment will be entered sustaining in part

---

[5] The Wall Street Journal surveys large banks and publishes the consensus prime rate. The Journal surveys the 30 largest banks, and when three-quarters of them (23) change, the Journal changes its rate, effective on the day the Journal publishes the new rate. It is the most widely quoted measure of the prime rate, which is a common benchmark for consumer and business loans set by banks, usually at a level 3 percentage points higher than the Federal funds rate. The prime rate will move up or down in step with changes by the Federal Reserve Board.

the Debtor's Objection to Claim and valuing the collateral at the stipulated sum of $45,000, with interest at the rate of 9% for purposes of determining the secured amount of CIT's claim. The remaining amount due to CIT is an unsecured claim.

     Signed at Houston, Texas on this 31st day of March, 2006.

                                             LETITIA Z. CLARK
                                             UNITED STATES BANKRUPTCY JUDGE